NOT DESIGNATED FOR PUBLICATION

No. 125,694

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES R. LUCAS,
*Appellant*,

v.

PETER B. LUCAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Submitted without oral argument. Opinion filed June 7, 2024. Affirmed.

*James R. Lucas*, appellant pro se.

*Mark V. Bodine*, of Bennett & Bodine, P.A., of Shawnee, for appellee.


Before COBLE, P.J., GREEN, J., and TIMOTHY G. LAHEY, S.J.


PER CURIAM: We resolve this case through a straightforward exercise of contract interpretation. James Lucas sued his son, Peter Lucas, alleging theft, concealment, and elder abuse. The district court granted Peter summary judgment because James had previously waived his claims against Peter as part of a settlement agreement in a separate lawsuit. After reviewing the record, the parties' arguments, and the settlement agreement, we find the district court did not err and affirm its summary judgment order.

1

In 2017, James sued his former employer, Dadson Manufacturing Corp., and several other parties. The case went to trial in December 2018, and a jury awarded James $278,000 in deferred compensation against Dadson. But the jury also awarded Dadson a judgment for $517,000 against James—$117,000 for conversion and $400,000 for breach of fiduciary duty—and found that Dadson was entitled to an award of punitive damages from James.

At the punitive damages hearing on March 12, 2019, the parties announced they had reached a settlement. By that time, James had begun representing himself. The parties explained on the record the broad strokes of the settlement agreement. Under their agreement, Dadson agreed to waive its right to punitive damages, and, along with the other named defendants and Peter, agreed to waive its claims against James and his companies. In exchange, James agreed to waive his claims against Dadson, the other named defendants, and Peter—who was Dadson's employee.

The parties, however, struggled to finalize a settlement document—James sought to continue negotiating, while Dadson moved to enforce the settlement. The district court denied James' motion to continue negotiations and granted Dadson's motion to enforce the agreement. But the parties continued to struggle to reach an acceptable agreement. The district court granted Dadson's second motion to enforce the settlement and ordered that the parties exchange a signed settlement agreement within 10 days. The parties then stipulated that the transcript of the March 2019 hearing would serve as the binding settlement agreement.

In December 2019, James filed a pro se lawsuit against Peter—the subject of this appeal—claiming Peter had misappropriated funds from two of James' companies and that this constituted a form of elder abuse. Peter's answer asserted that James was barred

from pursuing this suit because of the mutual waiver of claims between James and Peter in the March 2019 settlement agreement.

Peter later moved for summary judgment, setting forth 23 uncontroverted facts in accordance with Kansas Supreme Court Rule 141 (2024 Kan. S. Ct. R. at 220). The essence of the motion can be summarized as follows. Peter worked for two of James' companies. According to James' petition, Peter diverted funds that belonged to James' companies for his own use. These claimed "thefts" began as early as 2012 and James knew about all of the potential claims for diverted funds by January 2019. The parties entered a settlement agreement in which James agreed to waive his claims against Peter that existed on March 12, 2019, and Peter agreed to waive his claims against James. Peter's summary judgment motion also alleged that after the parties entered into this settlement agreement, James then filed several motions trying to renew negotiations in the original suit, but they were denied because the district court found the settlement agreement was an enforceable contract; and that James then filed this suit against Peter.

In his response to Peter's summary judgment motion, James agreed that he knew of Peter's alleged diversion of funds by January 2019, and he agreed that the parties fleshed out the settlement agreement to the district court on March 12, 2019. James also agreed that the parties stipulated that their settlement agreement was made up of the transcript from the March 12 hearing, but he argued that the "agreement settled that case . . . and nothing else." And while he argued that Peter's reference to the transcript of the March 12 hearing "continues [Peter's] tiresome approach of using settlement language in an unrelated case to somehow magically cover any and all claims in all other cases," James did not provide any evidence to controvert Peter's assertion that James agreed to waive his claims against Peter under that agreement. Finally, James agreed that he filed this suit against Peter, but he explained that this was because he "believed and hoped that

3

a different court and judge could perhaps right some of the many wrongs committed against him."

The district court found that James' response—as well as the supporting memorandum he subsequently filed—failed to comply with Rule 141. The court noted that all of James' disputes with Peter's factual assertions were "merely argumentative" and failed to establish any genuine issues of material fact. Therefore, the court considered Peter's uncontroverted statement of facts admitted. The district court then granted Peter's motion for summary judgment, finding that James was barred from pursuing these claims under the March 2019 settlement agreement.

DISCUSSION

James appeals the district court's decision to grant Peter's summary judgment motion. An appellate court reviews a district court's summary judgment order de novo:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.'" *Unruh v. City of Wichita*, 318 Kan. 12, 19, 540 P.3d 1002 (2024) (quoting *Schreiner v. Hodge*, 315 Kan. 25, 30, 504 P.3d 410 (2022).

A disputed question of fact does not preclude summary judgment if that fact "is immaterial to the issue." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013). In other words, "if the

4

disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact." 296 Kan. at 934. In addition, under Supreme Court Rule 141, a party controverting an opposing party's factual assertion in a summary judgment motion must do so by "concisely summariz[ing] the conflicting testimony or evidence and any additional genuine issues of material fact that preclude summary judgment" and "provide precise references" to pages, lines, and paragraphs for each fact that is controverted. Supreme Court Rule 141(b)(C)(i)-(ii) (Kan. S. Ct. R. at 221). If a party fails to do so, the district court will deem as admitted the moving party's statement of uncontroverted facts. *David v. Hett*, 293 Kan. 679, 681, 270 P.3d 1102 (2011).

We hold pro se litigants—like James—to the same procedural standards as represented parties. *Sperry v. McKune*, 305 Kan. 469, 490, 384 P.3d 1003 (2016). Accordingly, we find the district court properly concluded that James' failure to comply with Rule 141 rendered Peter's factual assertions admitted for purposes of summary judgment. Thus, the only question we must answer here is whether the parties' settlement agreement—the transcript from the March 2019 hearing—covers the claims that James now brings against Peter. We have no difficulty in finding that it does.

We exercise unlimited review over the interpretation and legal effect of written instruments, and we are not bound by the lower court's interpretations or rulings. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018). "'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Russell v. Treanor Investments*, 311 Kan. 675, 680, 466 P.3d 481 (2020).

The transcript from the March 2019 hearing—which serves as the parties' settlement agreement—provides that "James Lucas will waive his claims against . . . Peter Lucas." Although James argues that this agreement only covers "claims related to

5

the case that was actually being settled," this contention is undermined by the record—the agreement explicitly included a release against Peter, who was not a party to the original suit. In addition, James admitted that he knew of Peter's purported bad acts by January 2019—two months before he entered into the settlement agreement and waived his claims against Peter. Thus, under the plain and unambiguous language of the settlement agreement, James' current suit against Peter is precluded.

None of James' remaining arguments alter this outcome. James argues the district court erroneously relied on an earlier version of the settlement agreement when ruling on the summary judgment motion, but that does not affect our reading—or the validity—of the March 12 transcript. James also argues a party breached the settlement agreement so that he was no longer bound by it, but this is a conclusory assertion unmoored by an anchor to the record and, as the district court properly found, failed to comply with Rule 141. And finally, James' arguments related to the delay in the district court's proceedings have no effect on our summary judgment analysis.

We therefore find James' claims against Peter are precluded by the March 2019 settlement agreement and affirm the district court's summary judgment order.

Affirmed.